FILED: SEPTEMBER 3, 2008
08CV5019
JUDGE DOW
MAGISTRATE JUDGE SCHENKIER
CH

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL SCHWARZ, | ) | |
| | ) | CASE NO. |
| Plaintiff, | ) | |
| | ) | Honorable Judge |
| vs. | ) | |
| | ) | |
| LOYOLA HEALTHCARE SYSTEMS, | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | **JURY DEMANDED** |

## COMPLAINT

Plaintiff Daniel Schwarz, M.D., by his attorney, Charles Siedlecki & Associates, complains that the defendant, Loyola Healthcare Systems, through its Loyola University Medical Center ("Medical Center"), violated plaintiff's federal statutory rights, as more fully set forth below.

## NATURE OF THE CASE

1.  Plaintiff Daniel Schwarz, M.D. brings this action for declaratory, injunctive, monetary and other appropriate relief to redress intentional violations by the defendant, Loyola Health Care Systems, through its Medical Center, of rights secured to him by the laws of the United States of America, and the common law of the State of Illinois.

2.  Plaintiff challenges defendant's discriminatory treatment in the terms and conditions of his employment in the Medical Center's general surgery rotation residency program and preclusion from participation in the Plastic Surgery residency program based upon his disability, and/or defendant's perception that he had a disability, and/or his record of having a disability.

-1-

3.  Plaintiff challenges defendant's failure to reasonably accommodate plaintiff's disability by requiring him to work excessive hours.

4.  Plaintiff challenges defendant's retaliatory dismissal from the general surgery rotation residency program and preclusion from participating in the Plastic Surgery residency program, for requesting an accommodation for his disability and complaining about different treatment in the terms and conditions of his employment and having to work long hours in violation of the Accreditation Council for Graduate Medical Education's ("ACGME") standards.

## JURISDICTION AND VENUE

5.  This action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Federal Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.,* and the common law of the State of Illinois.

6.  This Court has original jurisdiction over plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367.

7.  Venue properly lies before this Court under 28 U.S. C. § 1391(b) and (c) as all actions complained of herein occurred within the jurisdiction of this Court and involve a defendant who resides within this Court's jurisdictional limits.

## PARTIES

8.  Daniel Schwarz, M.D. (hereafter "the plaintiff") is a licensed physician and resident of the state of Illinois and a citizen of the United States of America.

9.  Loyola Healthcare Systems (hereafter "the defendant"), is an Illinois not-for-profit corporation, which owns and operates the Loyola University Medical Center located in Maywood, Illinois.

**FACTUAL ALLEGATIONS**

10.  In February 2006, the plaintiff, a licensed physician, desiring to become a plastic surgeon, applied to the defendant's Medical Center for a second-year position in its three-year Plastic Surgery Residency Training Program, having previously completed one year of the training at the University of Michigan.

11.  Plaintiff was, and is, highly qualified for the position and participation in the program, as evidenced by two letters of recommendation from the University of Michigan Plastic Surgery Residency Program Director and Professor of Surgery and Neurosurgery, which were attached to the plaintiff's application, highlighting his excellent credentials, outstanding potential, dedication, determination, insight, and recent receipt of the national Bernard Spiessel Award by the American Society of Maxillofacial Surgeons, and scheduled presentations at the American Society of Plastic Surgeons.

12.  After a review of the plaintiff's application, on February 24, 2006, the Medical Center invited plaintiff for an interview.

13.  On March 31, 2006, plaintiff interviewed with the Medical Center for a position in the Plastic Surgery residency program.

14.  On April 29, 2006, the Medical Center offered to the plaintiff a position in the second year of its three-year residency program in Plastic Surgery which plaintiff accepted.

15.  In August 2006, defendant required plaintiff to sign a Graduate Medical Education Agreement for participation in the Medical Center's graduate medical education training program, and employment in a PGY-7 position, commencing August 31, 2006, and extending for a one year period, with a stipend of $50,662.00, plus benefits.  *(A copy of the Agreement is attached as Exhibit 1).*

16.  Prior to beginning in the PGY-7 position in the plastic surgery residency, the plaintiff was assigned to a non-accredited general surgery rotation where he would receive training under the direct supervision of the chairman of the Department of General Surgery.

17.  On September 1, 2006, the plaintiff began the general surgery residency rotation with the defendant's Medical Center.

18.  During his assignment to the general surgery rotation, the defendant required plaintiff to work long hours in excess of those allowed by the ACGME.

19.  Throughout his residency with the defendant, the plaintiff satisfactorily performed the essential requirements of his position and the program.

20.  On September 22, 2006, the defendant informed the plaintiff in a letter, that it decided to terminate him from its non-accredited general surgery residency rotation, and not allow him to participate in the Plastic Surgery Residency Training Program, as previously agreed.

21.  After exhausting internal grievance procedures, plaintiff received a final decision from the Dean of the Stritch School of Medicine, confirming his dismissal from the residency program, and rescission of the prior offer to participate in the plastic surgery residency program.

-4-

## COUNT I

### Violation of Title I of the ADA – Disparate Treatment

22.  The plaintiff realleges paragraphs 1 through 21 of this complaint as though fully set forth in this Count I.

23.  The plaintiff has satisfied the administrative filing prerequisites for maintaining an ADA claim and has timely filed this complaint less than 90 days after receiving a right to sue letter from the EEOC.. *(A copy of which is attached hereto, as Exhibit 2).*

24.  At all times material hereto, the plaintiff was, and is currently, a qualified individual with a disability within the meaning of the ADA and entitled to its protections.

25.  At all times material hereto, the defendant was, and is currently, a covered entity under the ADA and covered by its provisions prohibiting disability discrimination and requiring accommodations for qualified individuals with disabilities.

26.  At all times material hereto, the plaintiff met all the qualifications for employment and participation in the Medical Center's general and plastic surgery residency programs.

27.  At all times material hereto, the plaintiff was, and is, qualified to perform the essential functions of the position to which he was assigned in the Medical Center's general surgery program and participation in the plastic surgery residency program, with or without an accommodation.

28.  At all times material hereto, while participating in the general surgery residency program, the plaintiff satisfactorily performed the essential requirements of his assignment and the program.

29.  Prior to his hire by the defendant, the plaintiff informed its agents and employees that he had been diagnosed with and was being treated for Attention Deficit Hyperactivity Disorder (hereafter "ADHD"), for which he was taking prescribed medication.

30.  The medication taken by the plaintiff is ineffective if he is required to work excessively long working hours.

31.  On several occasions during his general residency rotation in the burn unit, plaintiff requested accommodations to his work schedule to avoid working excessive hours, but his requests were ignored.

32.  If plaintiff in unable to take a dose of his medication, or needs to take additional medication to cover for working long hours, without a break, his ADHD may not be properly controlled, and he will be substantially limited in his ability to perform one or more major life activities.

33.  Prior to his hire by the defendant, the plaintiff informed its agents and employees that he had a history of having been substantially limited in performing one or more major life activities, including, but not limited to, working and interacting with others, because of his ADHD.

34.  Prior to his hire by the defendant, the plaintiff informed its agents and employees that he had a history of alcoholism, prescription drug abuse, and ADHD, which had, in the past, substantially limited his ability to work, think, and interact with others, and for which he had been hospitalized and treated.

35.  The defendant discriminated against the plaintiff in the terms and conditions of his residency employment because of his history of having been disabled in violation

-6-

of the ADA by dismissing him from the general surgery residency program and precluding him from beginning the Plastic Surgery residency program.

36. The defendant discriminated against the plaintiff in the terms and conditions of his residency employment because of a perceived disability in violation of the ADA by dismissing him from the general surgery residency program and precluding him from beginning the Plastic Surgery residency program.

37. The defendant discriminated against the plaintiff in the terms and conditions of his residency employment because of his disability in violation of the ADA by dismissing him from the general surgery residency program and precluding him from participating in the Plastic Surgery residency program.

38. The defendant discriminated against the plaintiff in the terms and conditions of his residency employment because of a perceived disability in violation of the ADA by failing to treat him fairly in accordance with the resident's handbook and program's guidelines requiring corrective progressive discipline and performance deficit warnings prior to discharge from the program.

39. The defendant discriminated against the plaintiff in the terms and conditions of his residency because of a history of having been disabled in violation of the ADA by failing to treat him fairly in accordance with the resident's handbook and program's guidelines requiring corrective progressive discipline and performance deficit warnings prior to discharge from the program.

40. The defendant discriminated against the plaintiff in the terms and conditions of his residency because of his disability in violation of the ADA by failing to treat him fairly in accordance with the resident's handbook and program's guidelines requiring

progressive discipline and performance deficit warnings prior to discharge from the program.

41. The defendant discriminated against the plaintiff in the terms and conditions of the residency program because of his disability in violation of the ADA by requiring him to work in the burn unit prior to beginning the second year plastic surgery residency program, for long hours, without prior notice, in excess of the hours allowed by the ACGME, under stressful conditions, without a break, requiring him, at times, to take additional medication for his ADHD, and, at other times, to skip a dose of medication, which exacerbated his condition.

42. The defendant discriminated against the plaintiff in the terms and conditions of the residency program because of his perceived disability in violation of the ADA by requiring him to work in the burn unit prior to beginning the residency program, for long hours, without prior notice, in excess of the hours allowed by the ACGME, under stressful conditions, without a break, requiring him, at times, to take additional medication for his ADHD, and, at other times, to skip a dose of medication, which exacerbated his condition.

43. The defendant discriminated against the plaintiff in the terms and conditions of the residency program because of his history of having been disabled in violation of the ADA by requiring him to work in the burn unit prior to beginning the residency program, for long hours, without prior notice, in excess of the hours allowed by the ACGME, under stressful conditions, without a break, requiring him, at times, to take additional medication for his ADHD, and, at other times, to skip a dose of medication, which exacerbated his condition.

44.   The defendant discriminated against the plaintiff in the terms and conditions of his residency in violation of the ADA by not affording him the same opportunities afforded to non-disabled employees and program participants to successfully complete the general surgery rotation program and participate in the Plastic Surgery residency program.

45.   As a direct and proximate cause of the defendant's unlawful practices, plaintiff has suffered, and continues to suffer, the indignity of discrimination, humiliation, mental anguish, anxiety, embarrassment, loss of wages, loss of career, and other benefits of employment, past, present, and future.

46.   As a direct and proximate cause of the defendant's unlawful practices, plaintiff has incurred, and continues to incur, attorney's fees, costs and other expenses, to remedy the defendant's violations of his statutory rights under the ADA.

47.   The plaintiff demands a trial by jury.

**WHEREFORE**, the plaintiff asks this Honorable Court to enter judgment in his favor and against the defendant in an amount in excess of  $1,000,000.00, together with attorney's fees and costs of this action and for such other and further relief this Court deems equitable and just.

## COUNT II

### Violation of Title I of the ADA – Failure to Accommodate

48.   Plaintiff incorporates the allegations in paragraphs 1 through 47 as set forth above into this Count II as though fully set forth herein.

49.  The ADA requires employers and program administrators to accommodate individuals with a disability to allow them to successfully perform the essential functions of the position to which they applied or were hired.

50.  Plaintiff made several requests to defendant's agents and employees to accommodate his disability by not requiring him to work excessively long hours, without a break, or more than 80 hours per week.

51.  The defendant failed to reasonably accommodate plaintiff's disability and thereby engaged in unlawful employment practices and discriminated against the plaintiff because of his disability in violation of the ADA.

**WHEREFORE**, the plaintiff asks this Honorable Court to enter judgment in his favor and against the defendant in an amount in excess of $1,000,000.00, together with attorney's fees and costs of this action and for such other and further relief this Court deems equitable and just.

## COUNT III

### Retaliation for Requesting Accommodation in Violation of the ADA

52.  Plaintiff incorporates the allegations in paragraphs 1 through 51,  as set forth above into this Count III as though fully set forth herein.

53.  The ADA prohibits retaliation against qualified individuals with a disability who request an accommodation for their disability.

54.  Plaintiff made several requests to defendant's agents and employees to accommodate his disability by not requiring him to work excessively long hours, without a break.

55.  Shortly after plaintiff's requests, defendant dismissed him from his position in the general surgery residency program and precluded him from participating in the Plastic Surgery residency program, in retaliation for requesting an accommodation for his disability.

**WHEREFORE**, the plaintiff asks this Honorable Court to enter judgment in his favor and against the defendant in an amount in excess of $1,000,000.00, together with attorney's fees and costs of this action and for such other and further relief this Court deems equitable and just.

## COUNT IV

### Violation of Title II of the ADA – Discrimination in a Program or Activity

56.  Plaintiff incorporates the allegations in paragraphs 1 through 55 as set forth above into this Count IV as though fully set forth herein.

57.  Defendant is a "public entity" within the meaning of Title II of the ADA.

58.  Defendant discriminated against plaintiff by excluding him from continued participation in the general residency program and precluding him from participating in the Plastic Surgery residency program because he is disabled, and/or was regarded as being disabled, and/or has a history of having been disabled, in violation of Title II of the ADA.

59.  Defendant discriminated against plaintiff by excluding him from participation in and denying him the benefits of the services and activities of the Medical Center's residency programs in violation of Title II of the ADA.

60. The Rehabilitation Act requires employers and program administrators to accommodate individuals with a disability to allow them to successfully perform the essential functions of the position to which they applied or were hired.

61. Plaintiff made several requests to defendant's agents and employees to accommodate his disability by not requiring him to work excessively long hours, without a break.

62. The defendant failed to reasonably accommodate plaintiff's disability and thereby engaged in unlawful employment practices and discriminated against the plaintiff because of his disability in violation of the Rehabilitation Act.

63. Defendant's requirements that plaintiff work excessive hours and work in the general rotation residency program prior to admission to the Plastic Surgery program afforded plaintiff an unequal opportunity to participate in the Medical Center's residency programs.

**WHEREFORE,** the plaintiff asks this Honorable Court to enter judgment in his favor and against the defendant in an amount in excess of $1,000,000.00, together with attorney's fees and costs of this action and for such other and further relief this Court deems equitable and just.

## COUNT V

**Violation of the Rehabilitation Act, 29 U.S.C. § 794 – Intentional Discrimination**

64. Plaintiff adopts and incorporates the allegations in paragraphs 1 through 63, as set forth above into this Count V as if set forth fully herein.

65. On information and belief, during all times material hereto, defendant received federal financial assistance from the federal government in connection with the operation of its Medical Center.

66. Defendant discriminated against plaintiff by excluding him from participation in and denying him the benefits of the services and activities of the Medical Center's residency programs in violation of the Rehabilitation Act.

67. Defendant dismissed plaintiff from continued participation in its general surgery residency program and precluded plaintiff from participating in its Plastic Surgery residency program because of his disability, and/or defendant's perception that he has a disability, and/or his record of having been disabled, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*

68. As a direct and proximate cause of the defendant's unlawful practices, plaintiff has suffered, and continues to suffer, the indignity of discrimination, humiliation, mental anguish, anxiety, embarrassment, loss of wages, loss of career, and other benefits of employment, past, present, and future.

69. As a direct and proximate cause of the defendant's unlawful practices, plaintiff has incurred, and continues to incur, attorney's fees, costs and other expenses, to remedy the defendant's violations of his statutory rights under the Rehabilitation Act.

**WHEREFORE**, the plaintiff asks this Honorable Court to enter judgment in his favor and against the defendant in an amount in excess of $1,000,000.00, together with attorney's fees and costs of this action and for such other and further relief this Court deems equitable and just.

-13-

## COUNT VI

### Violation of Illinois Common Law – Retaliatory Discharge

70.　Plaintiff realleges the allegations in paragraphs 1 through 69 as set forth above into this Count VI as though fully set forth herein.

71.　On several occasions prior to his dismissal from the general surgery residency program and participation in the Plastic Surgery residency program, plaintiff complained to defendant and others that defendant was requiring him to work more than 24 hours without a break and more than 80 hours per week, contrary to the requirements of the ACGME.

72.　Defendant's requirement that residents in its Medical Center's residency program work more than 24 hours without a break and more than 80 hours per week is contrary to the public policy of the State of Illinois.

73.　Defendant dismissed plaintiff in retaliation for his complaints that defendant was requiring residents to work excessively long hours without a break and more than 80 hours per week.

74.　Defendant's dismissal of plaintiff from his position in the general surgery residency program and participation in the Plastic Surgery residency program because of his complaints violates a clear mandate of Illinois public policy.

75.　As a direct and proximate cause of the defendant's unlawful practices, plaintiff has suffered, and continues to suffer, the indignity of discrimination, humiliation, mental anguish, anxiety, embarrassment, loss of wages, loss of career, and other benefits of employment, past, present, and future.

76. As a direct and proximate cause of the defendant's unlawful practices, plaintiff has incurred, and continues to incur, attorney's fees, costs and other expenses, to remedy the defendant's violations of his statutory rights under the ADA.

77. The plaintiff demands a trial by jury.

**WHEREFORE**, the plaintiff asks this Honorable Court to enter judgment in his favor and against the defendant in an amount in excess of $1,000,000.00, together with attorney's fees and costs of this action and for such other and further relief this Court deems equitable and just.

## COUNT VII

### Defamation

78. Plaintiff realleges the allegations in paragraphs 1 through 77 as set forth above into this Count VII as though fully set forth herein.

79. Defendant published statements falsely accusing plaintiff of exhibiting poor clinical knowledge and judgment, inappropriate behavior, failure to provide safe, effective and compassionate patient care, harassment of hospital staff and unprofessional conduct.

80. Such statements were false and directly related to plaintiff's ability to perform his work as a physician.

81. Said false statements were published and unprivileged.

82. Said statements constitute an abuse of any privilege which may have applied to them.

83. Said statements were published with an intent to injure and/or a reckless disregard for plaintiff's rights and the consequence of such publication.

84. Defendant failed to conduct a proper pre-publication investigation of the truth of the published statements.

85. Defendant's investigation of the facts underlying the published defamatory statements were deficient to such a degree as to constitute a reckless disregard for plaintiff's rights.

86. Defendant knew the statements to be false when published.

87. The false statements described herein constitute defamation *per se.*

88. The false statements described herein constitute defamation *pre quod*.

88. As a result of the false statements, Plaintiff suffered damage to his reputation, pain, suffering, emotional distress, financial harm, job loos, wage loss, lost salary and benefits.

**WHEREFORE** the plaintiff asks this Honorable Court to enter judgment in his favor and against the defendant in an amount in excess of $1,000,000.00, together with compensatory damages, punitive damages, back-pay, reinstatement, attorney's fees and costs of this action and for such other and further relief this Court deems equitable and just.

Respectfully submitted,

/s/ Charles Siedlecki

Charles Siedlecki and Associates, P.C.
10540 South Western Avenue
Suite 405
Chicago, Illinois 60643
773/881-2535

-16-

08CV5019

## GRADUATE MEDICAL EDUCATION AGREEMENT    MAGISTRATE JUDGE SCHENKIER

CH

This Agreement is between LOYOLA UNIVERSITY MEDICAL CENTER and/or LOYOLA UNIVERSITY HEALTH SYSTEM, an Illinois not-for-profit corporation, (Loyola) and **Schwarz, Daniel, (Resident).**

Term of Agreement:

Agreement commences on the date Resident obtains
Illinois Medical Licensure, and if applicable,
appropriate visa, but no earlier than:              08/10/2006         Residency Program: **Non-Accredited**
Agreement terminates one year from the date of                                            **Remediation**
commencement of this Agreement, but no earlier than:  11/9/2006*         Position:   **PGY-7**
Stipend for the Term:                               $50,662.00**

    \* - unless terminated sooner pursuant to established policies and procedures
    \*\* – annualized

### PREAMBLE

This Agreement is entered into for the purpose of defining the relationship between Loyola and the Resident during the Resident's participation in Loyola's graduate medical education training program and supersedes all prior agreements for the same purpose covering portions of or all of the same period of time covered by this Agreement.

### STIPEND AND BENEFITS

Loyola shall provide the following stipend and benefits:

1.    Loyola shall provide the stipend set forth above during the term of this Agreement. The stipend obligation herein does not arise until such time as the Resident obtains or regains (in the event of loss) appropriate state licensure, work authorization papers and a valid Social Security Number.

2.    Loyola shall provide to the Resident those benefits listed on the Benefits Addendum 2006-07 edition which is attached hereto as Exhibit A, and made a part hereof.

3.    Loyola shall provide defense and indemnity against claims of liability and legal actions asserted or brought against the Resident for professional negligence within the scope of the activities assigned to the Resident under this Agreement. The Resident agrees to provide, and it is a condition of defense and indemnification that the Resident provide, prompt notice of any claim or suit and cooperation in the investigation and defense of any such claim or suit. Loyola reserves the right to select defense counsel and to investigate, settle or otherwise dispose of the matter as it sees fit. This Agreement to defend and indemnify does not extend to acts beyond the scope of activities assigned under this Agreement or to intentionally tortious or criminal acts.

### RESIDENT RESPONSIBILITIES

The Resident shall:

1.    Obtain and maintain, at his own expense, medical licensure in the State of Illinois. Should the Resident fail to become licensed to practice medicine in the State of Illinois by October 1, 2006, and when applicable, fail to obtain the appropriate authorization forms, Social Security Number, visas, and other permits as may be required by the United States Citizenship and Immigration Service, by October 1, 2006, this agreement shall become null and void.

2.    Notify the Central Office of Graduate Medical Education immediately of any notice of revocation, suspension, restriction, or change in licensure, visa status, or work authorization. If at any time within the term of this Agreement the Resident ceases to be properly licensed or authorized to remain or work in the United States, the Agreement may be terminated.

3.    Read and become familiar with the policies and procedures set forth in the Resident Handbook.

4.    Participate in safe, effective, and compassionate patient care, commensurate with his/her level of advancement, competence and responsibility under the general supervision of appropriately privileged attending teaching staff.

5.  Complete and sign, within ten (10) days of discharge, all medical charts of Loyola University Medical Center patients. Loyola may suspend the Resident for failure to complete and sign medical charts, by providing the Resident written notice of the suspension. Such suspension shall be immediately effective until all outstanding medical charts are completed and signed. Upon such suspension, if the Resident has available, accrued paid time off, the Resident shall be paid his/her stipend, for each day of such suspension, and such days shall be deducted from the Resident's available paid time off. Thereafter, if the Resident still has not completed and signed all outstanding medical charts during such suspension, the Resident shall be suspended without pay, and may be dismissed from the Program without credit.

6.  Develop an understanding of ethical, socio-economic and medical/legal issues that affect graduate medical education and how to apply cost containment measures in the provision of patient care.

7.  Secure Program Director approval prior to beginning outside professional activities not otherwise assigned, such as moonlighting. Failure to obtain advance approval for outside activities may be grounds for immediate termination.

8.  Abide by departmental and institutional policies and procedures, including, but not limited to, the Resident Wellness policy, the Duty/On-call Hours policy, and the Harassment in the Workplace policy, set forth in Resident Handbook.

9.  Refrain from engaging in any conduct, which may bring Loyola's graduate medical education training programs into disrepute.

10. Develop a personal program of professional growth with guidance from the key faculty members.

11. Participate fully in the educational activities of his program and, as required, assume responsibility for teaching and supervising other residents and students.

12. Participate in institutional programs and activities involving the medical staff.

13. Complete requisite evaluations of the training program and of the faculty as required by the program or institution.

14. Participate in any mandatory surveys required by the Central Office of Graduate Medical Education including but not limited to collection of information related to duty hours compliance, completion of annual safety and compliance training and submission of an annual disclosure statement.

15. Report any program-imposed violations of duty hours and workplace harassment/violence policies

## MISCELLANEOUS

Loyola abides by all applicable provisions of Federal, State and Local law. Loyola does not discriminate in its employment or educational policies and practices on the basis of race, color, religion (except where religion is a Bona Fide Occupational Qualification for the job), national origin or ancestry, gender, sexual orientation, age, marital status, veteran's status, or any other classification protected by law. Otherwise qualified individuals are not discriminated against on the basis of physical or mental handicap/disability. Loyola will not tolerate racial, sexual or other forms of harassment of students, faculty, staff employees, or patients and has established policies and procedures to promptly address any complaints.

In the event of program discontinuation, reduction in the size of the program or closure, Loyola will make every reasonable effort to fulfill the terms of this Agreement, which may include placement of Resident at an alternative site for the conclusion of his training during the present academic year. For further information, please refer to Resident Handbook.

The Resident shall not be bound by any non-competition guarantees by virtue of this Agreement.

## GRIEVANCE PROCEDURE

A Resident may request the resolution of a concern or dispute regarding his clinical and educational performance, conduct, and eligibility to continue in the graduate medical education program through the Graduate Medical Education Grievance Procedure. The Grievance Procedure can be found in the Resident Handbook in Section III. In addition, Residents may request a copy of the procedure from the Central Office of Graduate Medical Education at any time. In order to request a grievance, the Resident must submit a written request for grievance to the Department Chairperson within fifteen (15) days of the event-giving rise to the grievance.

Although various departments within Loyola may establish rules of conduct for Residents assigned to those departments, the Graduate Medical Education Grievance Procedure shall be the sole grievance procedure available to a Resident in the event he requests the resolution of a concern or dispute regarding his clinical and educational performance, conduct and eligibility to continue in the Graduate Medical Education Program. Matters related to work environment or issues related to program faculty are resolved through the Ombudsman Program. The Ombudsman Program is described in Section III of the Resident Handbook.

## PROBATION/SUSPENSION/NON-RENEWAL OR TERMINATION OF AGREEMENT

The Resident acknowledges that the Program Director may place the Resident on academic probation as a result of clinical and educational deficiencies. The Resident further acknowledges that the Program Director and/or the Chief of Staff may suspend the Resident, without a stipend, or immediately terminate the Resident if the Program Director and/or Chief of Staff determines the Resident has failed to perform his duties, including those set forth in this Agreement. Depending upon the severity of an incident or extenuating circumstances, discipline may begin at any stage.

The Resident understands and hereby acknowledges that no renewal Agreement shall be issued to the Resident if he is on academic probation or suspension at the time of any contemplated renewal. Renewal agreements signed by the Resident while he is on probation or suspension shall be null and void. The Resident further acknowledges that renewal of this Agreement is at Loyola's sole discretion and agrees that Loyola does not commit itself to renewal of this Agreement under any circumstance and that he is not entitled to any renewal as a matter of law. In the event of non-renewal, Loyola shall provide Resident with written notice of non-renewal prior to the expiration of the term of this Agreement.

## REMEDIATION PERIOD

The Resident understands and hereby acknowledges that upon receipt of Illinois medical licensure, but prior to participating in resident rotations required of PGY-7 plastic surgery residents, he will be assigned to a non-accredited general surgery rotation where he will receive training under the direct supervision of the Chairman of the Department of Surgery for a period of time not to exceed three months. The Resident further understands and hereby acknowledges that he will not receive credit toward graduation and/or certification for the time spent in the general surgical rotation. Upon successful completion of this non-accredited general surgical training, the Resident shall begin his participation in the plastic surgery residency-training program where he will be eligible to receive credit toward graduation and/or certification. If the Resident does not successfully complete the general surgical training, he will not be permitted to participate in the plastic surgery residency-training program and this Agreement shall terminate immediately.

Upon the Resident's successful completion of the non-accredited general surgery rotation, he will be issued a new agreement for the plastic surgery residency-training program.

## DRUG/ALCOHOL TESTING

In the event the Illinois Medical Licensing Board does not require the Resident to participate in a state monitored rehabilitation program that includes random drug and/or alcohol testing, the Resident understands and acknowledges that Loyola shall require him to submit to random drug and/or alcohol testing (such testing to be completed by Loyola's Occupational Health Services) during the term of this Agreement. The Resident also understands and acknowledges that his failure to cooperate with Loyola's efforts to conduct random drug and/or alcohol testing shall be grounds for immediate termination of this Agreement. The Resident further understands and acknowledges that a positive drug and/or alcohol test may be grounds for immediate termination of this Agreement.

If the Illinois Medical Licensing Board requires the Resident to participate in a state monitored rehabilitation program, the Resident shall sign appropriate authorizations allowing his counselors/monitors to communicate and forward reports regarding his participation in the rehabilitation program to the Program Director and the Loyola Chief of Staff.

LOYOLA UNIVERSITY MEDICAL CENTER
AGREED:

RESIDENT
AGREED:

_____
Designated Institution Official

_____
Resident Signature

_____
Address

_____
Departmental Chair

_____
Telephone

_____
Date

_____
Program Director

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Daniel A. Schwarz**<br>1309 North Wells #1208<br>Chicago, IL 60610 | From:  **Chicago District Office**<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

**Certified Mail 7001 0320 0006 1098 8056**

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-02625 | **Karen  Lanners,**<br>**Investigator** | **(312) 353-0902** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

| | |
|---|---|
| **X** | More than 180 days have passed since the filing of this charge. |
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| **X** | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe,*
**John P. Rowe,**
**District Director**

8/29/2008
*(Date Mailed)*

cc:

**LOYOLA UNIV. MED. CTR.**

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | **Amended** <br> **440-2007-02625** |

| **Illinois Department Of Human Rights** | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Dr. Daniel A. Schwarz** | **(312) 933-6967** | **12-21-1962** |
| Street Address                          City, State and ZIP Code | | |
| **1309 North Wells #1208, Chicago, IL 60610** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **LOYOLA UNIVERSITY MEDICAL** | **500 or More** | **(708) 216-9000** |
| Street Address                          City, State and ZIP Code | | |
| **2160 South First Avenue,  Maywood, IL 60153** | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |
| Street Address                          City, State and ZIP Code | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN <br> ☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ OTHER *(Specify below.)* | Earliest **09-01-2006**   Latest **09-22-2006** <br> ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent in September 2006. My last position was Resident/Fellow. I have a medical condition that requires accommodation and Respondent is aware of the condition and the need for accommodation. On or about September 12, 2006 I complained to Respondent that my working conditions were preventing me from treating my medical condition, but no action was taken to accommodate me.

I believe I have been discriminated against because of a disability and retaliation in violation of the Americans with Disabilities Act of 1990.

I believe the Respondent Loyola Medical Center regarded me as having a disability and discriminated against me when it discharged me on September 22, 2006, based upon an erroneous perception of me being disabled and based upon my having a history of being disabled.

I believe Respondent Loyola Medical Center discriminated against me in the terms and conditions of my employment by failing to reasonably accommodate my disability and forcing me to work greater than 24 hours continuous shifts and by forcing me to work in excess of 80 hours within a work week.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. <br> X | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| JAN 2, 2008              *Charging Party Signature* <br> Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE 01-02-2008 <br> *(month, day, year)* |