# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL SCHWARZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 08 C 5019 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| LOYOLA UNIVERSITY MEDICAL CENTER, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Schwarz ("Schwarz") filed a seven-count amended complaint [6] against Defendant Loyola University Medical Center ("Loyola") alleging discriminatory employment practices. This matter is now before the Court on Defendant's motion to dismiss [13] Counts IV and VI for failure to state a claim upon which relief can be granted. For the reasons stated below, Defendant's motion [13] is granted in part and denied in part.

## I. Background[1]

Schwarz is a licensed physician who has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). Amend. Compl. ¶¶ 8, 29. After completing one year of training at the University of Michigan, Schwarz applied for a position in a three-year Plastic Surgery Residency Training Program ("Program") at Loyola, an Illinois not-for-profit corporation that owns and operates a medical care facility located in Maywood, Illinois. *Id*. ¶¶ 9-10. Loyola offered Schwarz a position in the Program, which he accepted. *Id*. ¶ 14. At the time that Schwarz was hired, Loyola was aware that Schwarz was taking prescription medication for

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

his ADHD and that it could substantially limit his ability to work and interact with others. *Id*. ¶¶ 29, 33.

Prior to starting the Program, Schwarz was required to participate in Loyola's non-accredited general surgery rotation ("Rotation"), which started on September 1, 2006. Amend. Compl. ¶¶ 15-17. On the first day of the Rotation, Schwarz and Loyola entered into an employment contract, the Graduate Medical Education Agreement ("Agreement"), which set the terms and conditions of Schwarz's employment as a resident in the Rotation. *Id*. ¶ 15. The Agreement provides that "prior to participating in the resident rotations required of PGY-7 plastic surgery residents, [Schwarz] will be assigned to a non-accredited general surgery rotation where he will receive training under the direct supervision of the Chairman of the Department of Surgery for a period of time not to exceed three months." Agreement at 3. Upon successful completion of the Rotation, "[Schwarz] shall begin his participation in the plastic surgery residency-training program" and "he will be issued a new agreement for the plastic surgery residency-training program." *Id*. However, if the Rotation is not successfully completed, "[Schwarz] will not be permitted to participate in the plastic surgery residency-training program and this Agreement shall terminate immediately." *Id*.

According to Schwarz, during the Rotation he was required to work more than 24 hours without a break and more than 80 hours per week, which was a violation of the standards established by the Accreditation Council for Graduate Medical Education. Amend. Compl. ¶ 71. Furthermore, because Schwarz's medication was ineffective at treating his ADHD after long hours of working without a break, his ability to work effectively was substantially limited. *Id*. ¶¶ 30, 32. Schwarz made several requests to change his work schedule to accommodate his need to avoid working excessive hours, but his requests were ignored. *Id*. ¶ 31. On September 22, 2006,

Schwarz was informed that Loyola had decided to dismiss him from the Rotation. *Id.* ¶ 20. Schwarz also was barred from participating in the Program. *Id.*

After exhausting all of the internal grievance procedures at Loyola, Schwarz filed a complaint against Loyola, which was followed soon after by an amended complaint. Schwarz's amended complaint raises seven counts relating to employment discrimination: Counts I-IV allege violations of the Americans with Disabilities Act; Count V alleges a violation of the Rehabilitation Act; Count VI alleges a violation of Illinois common law doctrine of retaliatory discharge; and Count VII alleges defamation. Loyola filed the present motion to dismiss Count IV and Count VI, arguing that Schwarz pleaded himself out of court on both counts. Schwarz subsequently withdrew Count IV of his Amended Complaint [18], leaving only the motion to dismiss Count VI currently before the Court.

## II.     Standard of Review

### A.     Legal Standard on a Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*,

550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

B.   **Facts Alleged in Pleadings**

As a preliminary matter, the Court must determine which facts are encompassed within the "pleadings" for consideration of Loyola's Rule 12(b)(6) motion. For purposes of a Rule 12(b)(6) motion, the Seventh Circuit has held that the pleadings "consist generally of the complaint, any exhibits attached to, and supporting briefs." *Thompson v. Ill. Dept. of Prof'l Relations*, 300 F.3d 750, 753 (7th Cir. 2002). More specifically, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Co.'s Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

While the Court must generally accept the allegations in the complaint as true, the Court is free to examine independently and form its own conclusions as to the proper construction and meaning of documents attached to, and made part of, a complaint. See *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1327 at 766 (1990)). To the extent that the terms of an attached document conflict with the allegations of the complaint, the attached document controls. *Centers v. Centennial Mortgage Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). "[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992)).

Here, Schwarz described the terms of the Agreement in his amended complaint and referenced a copy of the Agreement, which he labeled as Exhibit 1. Amend. Compl. ¶ 15. Although the Agreement was not, in fact, attached to his amended complaint, Schwarz included an unsigned Agreement as an exhibit to his original complaint. A slightly different, signed Agreement was added to the record as Exhibit B to Loyola's memorandum in support of its motion to dismiss [14].[2] The Agreement plays a central role in the dispute because it establishes the terms and conditions of Schwarz's employment. Therefore, the Court may consider the Agreement and form independent conclusions in evaluating Loyola's motion to dismiss.

## III. Discussion

Schwarz's claim for retaliatory discharge touches on two separate periods of employment with Loyola – one of which Schwarz never began. The first involved a position in Loyola's Rotation from which Schwarz was dismissed. The second involved a position in Loyola's Program, in which Schwarz was barred from participating because he never finished the Rotation. The Agreement establishes the distinction between the two positions. Schwarz's employment in the two programs was governed by different employment contracts. The

---

[2] Paragraph 15 of Schwarz's initial complaint [1] and Schwarz's first amended complaint states that "[i]n August 2006, defendant required plaintiff to sign a Graduate Medical Education Agreement for participation in the Medical Center's graduate medical education training program, and employment in a PGY-7 position, commencing August 31, 2006, and extending for a one year period, with a stipend of $50,662.00, plus benefits. (*A copy of the Agreement is attached as Exhibit 1*)." In his initial complaint, Schwarz attached a Graduate Medical Education Agreement, but the contract was unsigned. Additionally, the contract had a commencement date of August 10, 2006, which contradicts Schwarz's claim of commencement on August 31, 2006. Schwarz did not attach any exhibits to his amended complaint.

Loyola supplied a Graduate Medical Education Agreement, which it attached as Exhibit B to its memorandum in support of its motion to dismiss. Compared to the unsigned contract attached to Schwarz's initial complaint, Exhibit B has the exact same provisions, except for a discrepancy in the dates. Similarly, Exhibit B matches Schwarz's description in Paragraph 15 of his initial complaint and his first amended complaint, except for the date on the contract. While Schwarz alleges that the agreement commenced on August 31, 2006, Exhibit B establishes that the agreement commenced on September 1, 2006, which is only a one-day difference. This Court assumes that Schwarz and Loyola are referring to the same contract for employment, despite the slight discrepancies in the date on the contract.

5

Agreement states that if Schwarz had successfully completed the Rotation, he would have been "issued a new agreement for the plastic surgery residency-training program. Agreement at 1, 3. Furthermore, Schwarz was not permitted to start participating in the Program, until he had successfully completed the Rotation. *Id*. at 3. Since the positions are distinct, this Court will evaluate Schwarz's claims for retaliatory discharge separately for each position.

### A. Illinois Common Law Doctrine of Retaliatory Discharge

In Illinois, the general rule is that employment is at-will and an at-will employee may be discharged by an employer at any time for any reason. See *Buckner v. Atl. Plant Maint. Inc.*, 182 Ill.2d 12, 17-18 (1998). However, a narrow exception to that rule exists, pursuant to which a cause of action for retaliatory discharge is proper if the discharge violates the state's clear public policy. See *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 181-182 (1978) (termination for seeking compensation under the Workmen's Compensation Act); *Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 133 (1981) (termination for volunteering information about possible criminal activity to law enforcement authorities). To establish a retaliatory discharge claim, the plaintiff must plead and prove: (1) that he or she has been discharged; (2) in retaliation for his or her activities; and (3) that the discharge violates a clear mandate of public policy. See *Hartlein v. Ill. Power Co.*, 151 Ill.2d 142, 160 (1992) (citation omitted).

### B. Schwarz's Employment in the General Surgery Rotation

Loyola argues that Schwarz was a contract employee when he departed from the Rotation, so relief under the retaliatory discharge tort is unavailable to Schwarz, because that small harbor referenced above applies only to at-will employees. Loyola relies on two uncontested facts to suggest that Schwarz was not an at-will employee during the Rotation. First, Schwarz's position in the Rotation was governed by the Agreement. Second, the terms of

the Agreement establish that Schwarz's position in the Rotation would extend "for a period of time not to exceed three months."

Under Illinois law, employment relationships without a fixed duration are presumed to be terminable at the will of either party. *Robinson v. Christopher Greater Area Rural Health Planning Corp.*, 207 Ill.App.3d 1030, 1035 (5th Dist. 1991). To overcome that presumption, the claimant must identify clear contractual language showing that the parties agreed otherwise. *Id*. at 1035-1036 (citing *Duldulao v. St. Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 490 (1987)). The mere existence of an employment contract does not rebut the presumption of at-will employment, unless it establishes a specified duration. See *Johnson v. George J. Ball, Inc.*, 248 Ill.App.3d 859, 864 (2d Dist. 1993) ("in general, an employment contract is terminable at will by either party unless the contract itself specifies a different durational term").

Schwarz's concession that his employment in the Rotation was governed by the Agreement does not necessarily contradict his claim that he was an at-will employee. In fact, a contract for employment "not to exceed" a certain period suggests an indefinite term of employment rather than a definite one. See *Foiles v. North Greene Unit Dist. No. 3*, 261 Ill.App.3d 186, 189 (4th Dist. 1994) (citing 30 C.J.S. *Employer-Employee Relationship* § 43, at 3 (1992)); see also *Terrebonne v. Louisiana Ass'n of Educators*, 444 So.2d 206, 209 (La. App. 1983) (reasoning that a provision for employment "not to exceed" three years states a maximum time for employment but does not bind either party to an employment relationship for any certain period of time). Here, Loyola has established that the Rotation cannot extend beyond a maximum of three months, but Loyola has not shown any obligation on the part of either party to maintain the employment relationship for any minimum duration of time.

Loyola's attempts to compare the present dispute to *Blount v. Stroud*, 376 Ill.App.3d 935, 943 (1st Dist. 2007) *rev'd on other grounds,* 232 Ill.2d 302 (2009), and *Krum v. Chicago Nat'l League Ball Club, Inc.*, 365 Ill.App.3d 785, 789 (1st Dist. 2006), are unpersuasive. As Loyola acknowledges, the courts in both cases dismissed claims for retaliatory discharge because the contract for employment set a fixed term. Since Loyola has not shown that Schwarz's employment was for a definite duration, Loyola has failed to rebut the presumption that Schwarz's employment was at-will. Accordingly, the Court concludes that Schwarz has not pled himself out of court on his claim of retaliatory discharge from his employment in the Rotation.

**C.     Schwarz's Employment in the Plastic Surgery Residency Training Program**

Loyola also contends that Schwarz has failed to state a claim because Schwartz's departure from the Program is not recognized as a "discharge" under Illinois' retaliatory discharge doctrine. The first element of retaliatory discharge requires that the employee was discharged. *Hartlein*, 151 Ill.2d at 160. Under Illinois law, discharge means "the release, dismissal, or termination of an employee." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707-708 (7th Cir. 2004) (citing *Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 152 (1st Dist. 1999)). The Illinois courts also have recognized that a coerced resignation can fulfill the discharge requirement. *Melton v. Cent. Ill. Pub. Serv. Co.*, 220 Ill.App.3d 1052, 1056 (4th Dist. 1991). However, the Illinois Supreme Court explicitly has expressed its disinclination to further expand the scope of the retaliatory discharge tort. See *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill.2d 29, 39 (1994) (noting the concern that a broad definition of discharge "would replace the well-developed element of discharge with a new, ill-defined, and potentially all-encompassing concept of retaliatory conduct or discrimination"). Attempts to seek relief under the theory of retaliatory discharge for an employer's conduct short of actual discharge repeatedly

have been rebuffed. See, *e.g.*, *Zimmerman*, 164 Ill.2d at 43-44 (refusing claims of retaliatory demotion); *Hartlein*, 151 Ill.2d at 163 (rejecting claims of constructive discharge where the employee voluntarily quit); *Melton*, 220 Ill.App.3d at 1056-1057 (denying claims for threats of retaliatory discharge).

Whether Schwarz can state a claim for retaliatory discharge from the Program turns on whether the circumstances of his departure fall within the narrow definition of a discharge recognized under Illinois law. Schwarz describes the manner of his departure as follows: "he was hired to the position of a second year resident in the plastic surgery program * * * was 'assigned' to the general surgery rotation for training * * * and was terminated while participating in that training, and not allowed to participate in the plastic surgery program, 'as previously agreed.'" Schwarz does not expand on how the manner of his departure constitutes an actual discharge under Illinois's narrow definition, but a review of the Agreement helps to establish the framework of Schwarz's employment at the time that he departed from Loyola. The Agreement states:

> Upon successful completion of this non-accredited general surgery training, the Resident shall begin his participation in the plastic surgery residency-training program * * * If the Resident does not successfully complete the general surgical training, he will not be permitted to participate in the plastic surgery residency-training program and this Agreement shall terminate immediately. Upon the Resident's successful completion of the non-accredited general surgery rotation, he will be issued a new agreement for the plastic surgery residency-training program.

Schwarz's description of his departure, in light of the Agreement, can be interpreted in one of two ways. Under one possible interpretation, Schwarz had no employment relationship with Loyola for the position in the Program, because he never started working in the Program. Alternatively, Schwarz had a pre-existing employment relationship with Loyola through the Rotation, but Loyola declined to continue the relationship by hiring Schwarz for a position in the

Program. In either case, Schwarz is unable to state a claim for retaliatory discharge from the Program.

The terms of the Agreement suggest that Schwarz was not an employee of the Program at the time of his departure. Since Schwarz did not successfully complete the Rotation, Schwarz did not fulfill the conditions under the Agreement to start working in the Program or obtain from Loyola an employment contract specific to the Program. In fact, Schwarz does not claim that he ever was employed as a part of the Program. Rather, his allegation that he was "not allowed to participate in the plastic surgery program" implies that he never started working in the Program. It is unlikely that the Illinois courts would recognize a claim for retaliatory discharge by an individual who had yet to start working or enter into an employment contract, because there is no existing employment relationship from which the individual could be discharged. Permitting Schwarz to state a claim for retaliatory discharge when he was barred from participating in the Program prior to starting his employment thus would expand the tort beyond its currently recognized bounds. In light of the Illinois courts' explicit reluctance to expand the tort, Schwarz cannot state a claim for retaliatory discharge from the Program when he never started as an employee of the Program. See *Freeman v. Mayer*, 95 F.3d 569, 574 (7th Cir. 1996) (explaining the reluctance of federal courts to adopt novel applications of state law).

Alternatively, Schwarz's description of his departure from Loyola's employment can be interpreted as a claim that Loyola failed to rehire Schwarz for a position in the Program, as they had previously agreed. While Schwarz was employed in the Rotation, Loyola informed Schwarz that he would be dismissed from the Rotation and barred from participating in the Program. Schwarz never started working in the Program and Loyola never issued a new contract for his employment in the Program.

Illinois case law provides some guidance in viewing the allegations through this alternate prism. In *Bajalo v. Northwestern Univ.*, 369 Ill.App.3d 576, 580 (1st Dist. 2006), the court considered whether a contract employee may bring a claim for retaliatory discharge when the employer fails to renew the employee's contract. The employer previously had renewed the employee's one-year contract twice; however, after the employee reported allegedly illegal practices to her supervisors and to regulatory agencies, the employer declined to renew her contract and the employee was dismissed after the term of her contract expired.. *Id.* at 578. Retracing the trend in Illinois Supreme Court cases that limited the scope of the tort, the court refused to extend the tort of retaliatory discharge to a claim of failure to renew an employment contract. *Id.* at 582-585. Even though the employee had a prior working relationship with the employer, the court found that the employer was not liable for retaliatory discharge for choosing to discontinue any future employment relationship. *Id.* Here, as in *Bajalo*, Schwarz's claim that he was the victim of a retaliatory discharge from the Program attempts to impose liability for Loyola's failure to issue a new contract for future employment. Applying the same reasoning, Schwarz has not alleged an actual discharge from the Program, because the manner of his departure does not qualify under Illinois law.

To be sure, although the Court adopts the reasoning in *Bajalo*, it is important to note two potential areas of distinction which render *Bajalo* an imperfect comparison to the present dispute. First, in *Bajalo*, the court emphasized that the employer did not renew the employment contract when it expired, so the employee was allowed to complete the entire term of her contract. 369 Ill.App.3d at 578. Here, by, contrast, Schwarz was allowed to complete only three weeks of his (at most) three month participation in the Rotation before he was dismissed. This Court's decision to allow Schwarz to proceed with his claim for retaliatory discharge from the Rotation

11

takes into account that distinction. Schwarz can state a claim for retaliatory discharge from the Rotation because he was actually discharged while he was employed as a part of the Rotation. However, *Bajalo* indicates that the Illinois courts would not recognize a claim for retaliatory discharge from his future employment in the Program.

Second, in *Bajalo*, there were no facts to suggest that the employer was obligated in any manner to renew the employment contract. In the present dispute, Schwarz alleges that Loyola did "not allow him to participate in the Plastic Surgery Residency training Program, as previously agreed." But the prior arrangement to which Schwarz alludes is not legally tenable in light of the express language of the Agreement, which "supersedes all prior agreements for the same purpose covering portions of or all of the same period of time covered by this Agreement." Despite Schwarz's claims that Defendant previously had agreed to employ him in the Program, the Agreement establishes that starting the Program and receiving a new employment contract for the Program is contingent upon the successful completion of the Rotation. Furthermore, the Agreement states that the employee "acknowledges that renewal of this Agreement is at Loyola's sole discretion and agrees that Loyola does not commit itself to renewal of this Agreement under any circumstances and that he is not entitled to any renewal as a matter of law." Notwithstanding Schwarz's allegations, the Agreement shows that Loyola was under no obligation under the circumstances to renew Schwarz's contract for the Program. And, as noted above, the Seventh Circuit has held that to the extent that the terms of an attached document conflict with the allegations of the complaint, the attached document controls. *Centers*, 398 F.3d at 933.[3]

In sum, the Illinois courts have adopted a strict interpretation of its first element for a claim of retaliatory discharge – namely, evidence of an actual discharge. Schwarz has failed to

---

[3] There are no allegations of a side agreement contrary to the terms of the Agreement.

satisfactorily allege that the termination of his relationship with Loyola for the position in the Program fits within the bounds of previously recognized discharges from employment. Therefore, dismissal of Schwarz's claim of retaliatory discharge from the Program is appropriate.

## IV. Request for Leave to Amend

Schwarz concludes his response to the motion to dismiss with a request to amend his First Amended Complaint. Under the Federal Rules of Civil Procedure 15(a)(1), "a party may amend its pleadings once as a matter of course before being served with a responsive pleading." While additional requests for leave to amend should be freely given when justice so requires, it is at the discretion of the court to determine. Fed. R. Civ. P. 15(a)(2); see *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir. 1995).

Here, Schwarz filed a First Amended Complaint prior to the filing of Loyola's responsive pleadings. Schwarz now seeks leave to file another amended complaint in order to clarify his allegations, which he suggests may have been misconstrued as a result of his initial pleading error. The only point of confusion, which Schwarz has attempted to clarify, was the relationship between his position in the Rotation and his position in the Program. Schwarz has emphasized that the Agreement only governs his employment in the Rotation and not his employment in the Program. This Court has acknowledged that distinction in its analysis, so further clarification in another amended complaint is unnecessary.

Schwarz also wants to amend his complaint to fix what he calls an initial pleading error. In his initial complaint, Schwarz referenced and attached a copy of the Agreement, which sets forth the terms of Schwarz's employment in the Rotation. As previously discussed, this Agreement is central to the dispute, because it establishes the employment relationship between the parties at the time that Schwarz was dismissed from Loyola. Amending the complaint to

13

remove any references to the Agreement would not cure any pleading "error," because a plaintiff may not escape a legally deficient claim by attempting to retract exhibits showing that the plaintiff is not entitled to relief. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753-754 (7th Cir. 2002).

In sum, because amending the complaint along the lines suggested by Plaintiff will not cure any pleading defects, the Court denies Plaintiff's request for leave to amend. See *Bilal v. Rotec Indus., Inc.*, 326 Fed. Appx. 949, 954 (7th Cir. 2009) (unpublished decision) ("the district court's denial of leave was not an abuse of discretion because the district court had already allowed Bilal to amend her complaint once, and, more importantly, it does not appear that any amendment could have cured the deficiency of the retaliation claim").

**V.     Conclusion**

For the foregoing reasons, Defendant's motion to dismiss [13] is granted in part and denied in part. Specifically, the Court denies Defendant's motion to dismiss the claims of retaliatory discharge from the Rotation, grants the motion to dismiss the claims relating to the departure from the Program, and denies the Plaintiff's request for leave to amend.

Dated:  September 18, 2009                         _____
                                                    Robert M. Dow, Jr.
                                                    United States District Judge