# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL SCHWARZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 08 C 5019 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| LOYOLA UNIVERSITY MEDICAL CENTER, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Schwarz ("Schwarz") filed a seven-count amended complaint [6] against Defendant Loyola University Medical Center ("Loyola") alleging discriminatory employment practices. This matter is before the Court on Plaintiff's motion for leave to file a second amended complaint [86], adding four additional state law claims. For the reasons set forth below, Plaintiff's motion [86] is denied.

## I.   Background[1]

Schwarz is a licensed physician who has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). After completing one year of training at the University of Michigan, Schwarz applied for a position in a three-year Plastic Surgery Residency Training Program ("Program") at Loyola, an Illinois not-for-profit corporation that owns and operates a medical care facility located in Maywood, Illinois. In May 2006, Loyola sent Plaintiff a letter notifying him that he had been "provisionally accepted" into the Program. The May letter indicated that as a condition to the offer of employment, there would be "a three-month period

---

[1] For purposes of Plaintiff's motion to amend, the Court assumes as true all well-pleaded allegations set forth in the second amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

for re-integration into clinical work." The letter also indicated that Plaintiff would be asked to sign a Loyola Graduate Medical Education Agreement. According to Plaintiff, at the time that he was hired, Loyola was aware that Schwarz was taking prescription medication for his ADHD and that it could substantially limit his ability to work and interact with others.

Prior to starting the Program, Schwarz was required to participate in Loyola's non-accredited general surgery rotation ("Rotation"), which started on September 1, 2006. On the first day of the Rotation, Schwarz and Loyola entered into an employment contract, the Graduate Medical Education Agreement ("Agreement"), which set the terms and conditions of Schwarz's employment as a resident in the Rotation. The Agreement provided that "prior to participating in the resident rotations required of PGY-7 plastic surgery residents, [Schwarz] will be assigned to a non-accredited general surgery rotation where he will receive training under the direct supervision of the Chairman of the Department of Surgery for a period of time not to exceed three months." The Agreement also stated that upon successful completion of the Rotation, "[Schwarz] shall begin his participation in the plastic surgery residency-training program" and "he will be issued a new agreement for the plastic surgery residency-training program." *Id*. However, if the Rotation was not successfully completed, "[Schwarz] will not be permitted to participate in the plastic surgery residency-training program and this Agreement shall terminate immediately." *Id*. Schwarz signed the Agreement on September 1, 2006.

According to Schwarz, during the Rotation he was required to work more than 24 hours without a break and more than 80 hours per week, which was a violation of the standards established by the Accreditation Council for Graduate Medical Education. Furthermore, because Schwarz's medication was ineffective at treating his ADHD after long hours of working without a break, his ability to work effectively was substantially limited. Schwarz made several requests

to change his work schedule to accommodate his need to avoid working excessive hours, but his requests were ignored. On September 22, 2006, Loyola informed Schwarz that it had decided to dismiss him from the Rotation. Schwarz also was barred from participating in the Program. *Id*.

After exhausting all of the internal grievance procedures at Loyola, Schwarz filed a complaint against Loyola on September 3, 2008, which was followed on September 24, 2008, by an amended complaint. Schwarz's amended complaint raised seven counts relating to employment discrimination: Counts I-IV alleged violations of the Americans with Disabilities Act; Count V alleged a violation of the Rehabilitation Act; Count VI alleged a violation of Illinois common law doctrine of retaliatory discharge; and Count VII alleged defamation. Schwarz subsequently withdrew Count IV (violation of Title II of the ADA) of his amended complaint and the Court granted in part and denied in part a motion to dismiss Count VI.[2] Plaintiff also requested leave to amend his first amended complaint, seeking to fix what he called an "initial pleading error." Plaintiff sought to remove references to the Graduate Medical Education Agreement attached to the complaint. The Court denied Plaintiff's request, finding that the Agreement is central to the dispute and that Plaintiff may not plead around it.

Discovery was scheduled to end on June 5, 2009, but following multiple extensions, it closed on November 30, 2010. At the close of discovery, Plaintiff sought leave to file a second amended complaint adding four new claims: promissory estoppel, equitable estoppel, breach of the covenant of good faith and fair dealing, and fraudulent concealment. Defendant opposes the motion, arguing that the facts supporting the additional claims have been known to Plaintiff for more than four years, and yet Plaintiff has inexcusably delayed bringing them until the end of

---

[2] The Court denied Defendant's motion to dismiss the claims of retaliatory discharge from the Rotation and granted the motion to dismiss the claims relating to departure from the Program.

protracted discovery. In addition to being untimely and prejudicial, Defendant maintains that the proposed amendments are futile.

**II.     Analysis**

In general, motions for leave to amend a complaint are freely granted "where justice so requires." Fed. R. Civ. P. 15(a)(2). Although leave to amend should be freely given, that does not mean it must always be given. "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008). Particularly concerning are motions for leave to amend brought at the close of discovery. See *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (affirming denial of leave to amend complaint brought three days before the close of discovery); *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991) (affirming denial of leave to amend complaint brought at the close of discovery); *Bohen v. City of East Chicago*, 799 F.2d 1180, 1184 (7th Cir. 1986) (affirming denial of leave to amend brought two weeks before the close of discovery because plaintiff was "less than diligent" and amendment prejudiced defendant).

In *Hukic v. Aurora Loan Services,* although the plaintiff asserted that he only learned of his new claim through discovery and shortly before he sought leave to amend, the court noted that the information actually was publicly available to him throughout the litigation. 588 F.3d at 432. Here, Plaintiff not only had the information relevant to his claims throughout the litigation, he has known it since before he filed suit. From the day he received his contract in August 2006, and certainly since commencing his employment pursuant to that contract on September 1, 2006, Plaintiff knew that he was employed as a general surgery resident in the Burn Unit under the

4

supervision of Dr. Gamelli, the Chairman of the Department of Surgery, and not as a resident in plastic surgery under Dr. Dado.  If the Plaintiff really believed that he had been promised that the whole of his employment would be in plastic surgery, he knew no later than September 1, 2006, that any such promise had not been kept.

In an effort to escape this conclusion, Plaintiff premises his new claims on the fact that in May 2006, Loyola promised him a resident position in the plastic surgery rotation, but then presented him with a contract in August 2006 that required him to submit to a three-month training program prior to entry into the plastic surgery rotation.  What Plaintiff fails to acknowledge is that the May letter (which is attached to the proposed second amended complaint) "provisionally" accepted him into the Program, subject to the condition that he participate in a three-month period for re-integration into clinical work.  If Plaintiff had a problem with the condition, then the time to raise it was in May 2006, and certainly before signing the Graduate Medical Education Agreement which explicitly detailed the terms of his employment.  If the conditions of his employment were not clear to him in May (despite the fact that the May letter explicitly stated that he has been provisionally accepted *subject to certain conditions*), then he should have known at the time that Loyola provided him with the Agreement to sign.  And he certainly knew when he was terminated in September 2006, more than four years before he attempted to bring these new claims.

While discovery would have been necessary to support and prove Plaintiff's new claims, it was not necessary to provide notice to Defendant of what claims it would be called upon to defend.  Plaintiff's request to amend comes after the parties have taken twenty-one depositions, with no further depositions scheduled.  Those depositions proceeded without notice to Defendant that Plaintiff would seek recovery under state law claims such as estoppel, and, even more

5

troubling from the standpoint of defending a lawsuit, fraud.  The Court concludes that the facts necessary to allege the claims that Plaintiff now seeks to add were squarely within Plaintiff's knowledge at the time that he filed this lawsuit, and that his delay in bringing these new claims prejudices Defendant's ability to defend itself in this lawsuit.

In addition, even if the delay in bringing the claims did not result in prejudice to Defendant, Plaintiff's new claims fail legally in any event.  Futility, in the context of Rule 15, refers to the inability to state a claim, not the inability of the plaintiff to prevail on the merits.  See *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) ("[A]n amendment may be futile when it fails to state a valid theory of liability or could not withstand a motion to dismiss.").  Futility means that the complaint, as amended would fail to state a claim upon which relief could be granted.  In reviewing for "futility," district courts apply the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion.  See, *e.g. Chen v. Mayflower Transit, Inc.,* 159 F. Supp. 2d 1103, 1107 (N.D. Ill. 2001) ("In reviewing [a proposed amendment] for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion."); *Fogarty v. City of Chicago,* 2002 WL 31409582, at *1 (N.D. Ill. Oct. 23, 2002) (same).

First, Defendant correctly points out that Illinois law does not authorize an independent cause of action for breach of the duty of good faith and fair dealing except "in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder." *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (quoting *Voyles v. Sandia Mortgage Corp.,* 751 N.E.2d 1126, 1131 (Ill. 2001).  That circumstance is not present here.  In response, Plaintiff maintains that he is not attempting to assert such a claim apart from the contractual obligations of the Graduate Medical Education Agreement.  However, Plaintiff has not brought a claim for breach of contract based on the

6

Agreement – most likely because the Agreement, which Plaintiff signed, clearly sets forth the terms and conditions of Plaintiff's employment as a resident in the Rotation and provides that prior to participating in the resident rotations, Plaintiff would be assigned to a three-month training program (general surgery rotation) and that he would not be permitted to participate in the Plastic Surgery Residency Training Program should he not successfully complete the general surgery training program. Without an attendant breach of contract claim, Plaintiff's claim for breach of the duty of good faith and fair dealing would be futile. See *Tammerello v. Ameriquest Mortg. Co.*, 2005 WL 1323559, at *4 (N.D. Ill. June 2, 2005) (dismissing claim for breach of the duty of good faith and fair dealing because Illinois does not recognize it as an independent cause of action).

Plaintiff's proposed claims for promissory and equitable estoppel similarly fail. Plaintiff's estoppel claims are premised on terms of the letter of intent, which "provisionally accepted" Plaintiff into the Plastic Surgery Residency Training Program. Plaintiff claims that he relied on the May 2006 letter to his detriment and that he passed on other educational opportunities in reliance on being accepted into Loyola's program. However, the May letter from Loyola indicated that as a condition of the offer of employment, there would be "a three-month period for re-integration into clinical work." The letter also notified Plaintiff that he would be asked to sign the Loyola Graduate Medical Education Agreement. Apparently, Plaintiff maintains that the provisional acceptance was a misrepresentation, based on the fact that he was subsequently dismissed from the rotation and barred from participating in the Plastic Surgery Program. But the letter explicitly told Plaintiff that he was provisionally admitted, subject to certain restrictions. He also was notified that he would need to sign the Loyola Graduate Medical Education Agreement, which he did in September 2006. To the extent that

7

Plaintiff relied on the May letter as a promise from Loyola that he was unconditionally admitted to the Plastic Surgery Program, that reliance cannot plausibly be found to have been reasonable or justified. See *Ross v. May Co.*, 880 N.E.2d 210, 217 (Ill. App. Ct. 1st Dist. 2007) (in affirming trial court's dismissal of plaintiff's estoppel claim because plaintiff could not have reasonably relied on employer's statements in foregoing other possible employment opportunities, the appellate court noted that in order to support a claim for promissory estoppel, "[a] plaintiff's reliance must be reasonable and justified"). In light of the specific reservations made in the May letter, the facts set forth in Plaintiff's proposed amended complaint simply cannot state a claim for promissory or equitable estoppel.

Finally, Plaintiff claims that Loyola fraudulent concealed the fact that it did not intend to present him with a contract for a position as a second year resident in its Plastic Surgery Residency Training Program under Dr. Dado and that, if he had been aware of that fact, he would not have abandoned other employment opportunities. Under Illinois law, the elements of a claim for fraudulent concealment are: (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury. See *Schrager v. North Comm. Bank,* 767 N.E.2d 376, 384 (Ill. 2002); see also *Baseman v. Weinschneider,* 322 F.3d 468, 476 (7th Cir. 2003). As a general matter, one alleging fraudulent concealment must "show

affirmative acts by the fiduciary designed to prevent the discovery of the action." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000) (quoting *Hagney v. Lopeman*, 590 N.E.2d 466 (1992)).

Here, Defendant notified Plaintiff of his provisional acceptance and of the conditions attendant with the offer. Accepting the allegations of the proposed amended complaint as true, there simply was no concealment of a material fact. Indeed, if Plaintiff really believed that the Graduate Education Agreement materially deviated from the offer that he received in the May 2006 letter, he would have notified Loyola of the discrepancy when he received the contract in August 2006, rather than signing the Agreement. Instead, Plaintiff signed a written contract governing his employment with Loyola. That contract was "entered into for the purpose of defining the relationship between Loyola and the Resident during the Resident's participation in Loyola's graduate medical education training program and supersedes all prior agreements for the same purpose covering portions of or all of the same period of time covered by this Agreement." While Plaintiff may proceed on his claims for discrimination, retaliation, and defamation, his belated effort to cry "fraud" on the basis of the May 2006 letter of intent falls far short of establishing any plausible basis for claiming fraudulent conduct on the part of Loyola.

**III.  Conclusion**

For these reasons, the Court denies Plaintiff's motion for leave to file a second amended complaint [86].

Dated:  April 27, 2011                    _____
                                                            Robert M. Dow, Jr.
                                                            United States District Judge